We are known as a hot court, which means that we read all the briefs, we have researched them, we have not discussed the cases with each other except to agree on the cases that should be orally argued. So if we interrupt your arguments, it's not that we don't want to let you be heard, it's that we have some idea as to what you're going to say and we have questions. Okay, we'll hear from counsel for the appellant. Good morning, may it please the court, I'm attorney Raymond Regatt, I represent the petitioner appellant, Mr. Gerald Hunt, in the incident appeal. Judge Sloander, if I may, I'd like to request five minutes of my time. Okay, that's one third of your time, but that's fine if you want to do it that way. Okay, that's fine, thank you. Thank you, your honor. The Anti-Terrorist Effective Debt Penalty Act, the one year rule, I think we could all agree the public policy consideration was to prevent an unending parade of habeas petition after habeas petition in state court being followed by wasting everybody's time in federal court, but that's not this case. This case really comes down to Gerald Hunt's case. It's a case that's never meaningfully tested on direct appeal. And it's a fundamental fairness issue. Is that the issue that you raised at the very end, which you didn't raise before? Oh, in my request to expand the certificate of appealability. Well, you didn't put it in your principal brief. No, I didn't, Judge Sloander. And it's our rule that if it's not in the principal brief, it's waived. Well, I'd ask for liberality in the interpretation of that rule. No, those are our rules. Well, but the problem again... What's the reason for giving it late? You know, I didn't see it. I didn't see it. And I'm going to be upfront about that. I'm going through the documents. I'm rereading them. Brother Counsel had filed some supplemental information. And the more I thought about this and looked at it and went back and it just was glaring to me that, wait a minute, he did file a notice of his intent to take an appeal. Even if you're right, the time has been so long since that issue that it would be waived because of the time. I mean, did you raise it in the state court, the fact that you say that he had a direct appeal pending that the state court never dealt with? He never raised it. He is you. Right, but I wasn't representing the state court. Yeah, but it's the client that counts. I mean, has anybody raised that issue? Has the issue been exhausted, timely exhausted? Well, I guess... I mean, you say that he filed this letter and nothing happened. Right. All right. Let's say you're right. Let's say that we can listen to it. Let's say that we expand the CLA to do that. Why hasn't that issue been waived because of the amount of time? Well, I think because the Pennsylvania's one-year rule, which seems modeled on or similar to the federal one-year rule, isn't applicable either because, of course, if we're right with this issue, the conviction's not a final conviction because it's still out in cyberspace somewhere. Yeah, but you have to raise that with someone. I mean, did somebody raise it with the state court? No. Oh, no. Well, how can we as a federal appeals court now tell the state that a notice of appeal that it is M-I-T-Y, not C-L-M-E-T-Y? I understand. Well, again, I think because the state court didn't see it as well. Yeah, but that's why you have to tell them if they didn't see it. Well, I mean, you know, it would be... What kind of system would it be if years later we as a federal appeals court told the state, hey, by the way, this guy has a direct appeal pending, and you haven't... You, the state court, haven't dealt with... Don't we have to give them the first opportunity? Well, perhaps then the remedy is a remand back to the state court because, again, it comes back to the issue of whether or not this one-year rule really has run in Pennsylvania. Is the remedy then for Hunt to file another PCRA petition and this time assert that, hey, wait a minute, no one's seen this. No one's looked at the document I filed because it meets all the requirements of the state rule. Do you want to talk about equitable tolling? Oh, absolutely. That's the certified question certainly. Can I ask you, I mean, I have a procedural issue. Now, I mean, I looked at the district court opinion and, I mean, they deal with tolling in footnote one, right? Yeah. And they only seem to deal with statutory equitable tolling, I guess, statutory tolling. Now, I know it was raised in the briefs. I got your adversary's brief in particular here. I mean, did the district court deal with this at all? Is there any indication the district court dealt with equitable tolling? That's a great point. I don't think so. But the way the certified question was raised was, okay, is equitable tolling a live issue here? I think it is a live issue here. Well, we're a dealing court. So, I mean, are we supposed to pick this up in the first instance and decide it? Well, it may be that it needs to be remanded back down because I think if you say, well, what should the rule be on equitable tolling in this kind of situation? Perhaps it's this, attorney misconduct that's tantamount to malfeasance may justify or justifies equitable tolling. Of course, the litigant has to act in a timely manner, but we don't really have a full record. We have some letters that he had submitted in his papers before the district court to suggest that he is writing back and forth to the people he believes are his lawyers, who took the $17,200 by way of fee, promising him to be waiting for transcripts, et cetera. But we don't know the whole story. There was never an evidentiary hearing held. It was just summarily disposed of by the district court. There's no question in my mind that he had an attorney who was ineffective. The case was amended by the Pennsylvania Disciplinary Committee because of his actions in other cases, but this is another one. McCormick was clearly ineffective, and you're absolutely right on that. The question is, did your client exercise diligence? Now, your client kept asking about the PCRA. Where does the PCRA proceeding stand? As far as I can tell, he never asked about the habeas. Can you comment on that? Maybe I'm confused. When you say the habeas, Judge, do you mean the PCRA habeas or do you mean the direct appeal? The federal habeas. I don't believe he was represented on the federal habeas. That's right. That he filed on his own. And that's why he's out of court. That's what is before us. Has he shown enough to show equitable tolling on the habeas proceeding? Isn't that what's before us? Maybe I'm wrong. I think he's made a demonstration that something's not right, what's not right. I never had a direct appeal. That's a little vague. I mean, you have to be very specific about what he asked. I mean, what was the COA for? What did the COA say? The COA was whether or not equitable tolling was applicable and what is required of a litigant to act with due diligence. And I think those are really the two issues that the court initially on what proceeding? I don't have it in front of me. Does anybody have it in front of them? Do you have it in front of you? I think it's on the issue of the federal habeas. Okay. All right. That's what I thought. Okay. So did he ever, what was his due diligence with respect to his letters to his attorney with respect to the federal habeas? As far as I can tell, he was asking the attorney only with respect to the state proceeding. Right. And I can't see anything. Now, he's not to show, before you have equitable tolling on the federal habeas, you have to show diligence. What was his diligence? I think his diligence was that finally he files a PCRA petition in state court and he does it repeatedly, two or three times. That's right, on the PCRA in the state. But that's not what your certificate of appealability is focused on. Oh, I see what you're saying. What's the, what diligence might he come to? Yeah, what's before us on that? I think we asked for letters on that. Okay. Well, we really asked for letters on the other thing. Go ahead. Okay. I think the due diligence is that when he finally resolves the matter as best he can in state court, then he filed directly in federal court. Well, the problem was that was 17 months later, though, wasn't it? Yeah, it was 17 months later. I mean, the problem here is your guy kind of took a leisurely pace about everything and that's obviously not going to jive with the rules. I mean, arguably, yeah. I mean, I can't hide the fact that that's problematic for him. Except that I do think he's, you know, he's doing this himself. He seems to be acting in a diligent manner once he becomes aware that, look, the lawyer that we paid all this money to is an absolute no-no for him. I feel really sorry for this guy because he had bad lawyers. Right. Why don't we hear – you saved five minutes. Why don't we hear from the other side and then we'll hear how you respond. Okay. Okay? May I please the court? Good morning. My name is Jason Lang. I'm the Susquehanna County District Attorney and I'm here on behalf of the respondent, Apelli Piazza, probably more particularly the Commonwealth of Pennsylvania. I think the court has already noted that the timetable in this particular matter is extremely important and we tried to lay that out as best we could in our briefs because I think if you're going to consider equitable tolling, and as the Third Circuit has applied equitable tolling, it requires a showing of one of two things or both, extraordinary circumstances and due diligence. And I think the timetable actually plays into both. I think you have to look at the timetable to determine whether or not the circumstances as presented to the timetable, whether or not this particular litigant, petitioner, defendant, did in fact exercise due diligence. And as I reviewed for this last night, I again was struck by the recent Supreme Court decision in Lawrence v. Florida, a 5-4 decision written by Justice Thomas. Interestingly, in that decision, Justice Thomas notes in dicta that it's never been determined whether or not equitable tolling is actually available to litigants. This circuit has decided that issue. The Supreme Court has never decided that issue. Okay, well, we're stuck with what we've done. He then goes on further to indicate, you know, here is a person in Lawrence v. Florida who filed a timely PCRA, or the equivalent in Florida of a PCRA, some type of post-conviction relief act remedy. He had one day to spare under his federal habeas. Now, that's not much time to spare. I mean, somebody's got to be ready to shoot that out as soon as that state Supreme Court makes a decision. In fact, the state Supreme Court did make a decision, their attorneys then timely filed the petition for cert to the Supreme Court, and then 113 days or so later, while the cert petition is pending with the United States Supreme Court, they then filed a habeas. So they're about 112 days late through counsel, state appointed counsel. And Justice Thomas, writing for the majority, noted a number of things when saying, is this an extraordinary circumstance? Well, first, he notes that a mistake of the time does not constitute an extraordinary circumstance. And finally, he indicates that reliance upon your state appointed attorney's expertise and knowledge does not represent an extraordinary circumstance. Pretty harsh decision, isn't it? It's a harsh decision to some degree. We can't do anything about it. I think you've already hit the nail on the head in the sense of the comedy that's involved here. That is that the states are in their convictions. We have three cases today in which that's going to move on. I think three. Are you talking about equitable tolling on the federal habeas or equitable tolling on the PCRA? I'm talking about it on the federal habeas. That's the only thing that's before us. It is the only thing that's before you. As far as the Commonwealth is concerned. Well, as far as the... I can't speak for the court, certainly. No, no, but that's what we granted a certificate of appealability on. Yes. And that's... we're limited to that unless we add this latest thing, which we'll get to in a few minutes. What I want to make the point in terms of Lawrence v. Florida, and as I thought about this last night some more, I thought, you know, Justice Thomas writing from the jury lays out some pretty harsh circumstances where at no fault of the litigant did he miss his filing deadline. And you take those circumstances and compare it to this case. And when I said the timeline is important to extraordinary circumstances, I think, yes, Mr. Hunt had a poor excuse for an attorney. Yes, his attorney was ineffective. With all due respect, Judge, I'm not sure I feel sorry for Mr. Hunt because he was engaged in murder. But I do feel that to some degree his counsel sure changed him. He was entitled to effective counsel and he didn't have it. He was. And I think McCormick was outrageous. I agree. And you correctly know he's been disbarred for other outrageous conduct. So he was a poor excuse for an attorney. There's no doubt about that. But when you look at this case and then you compare it to Lawrence and you think, well, here's a case where Mr. Hunt did nothing for a period of three years. August of 2000 is the last correspondence from his attorney. And I think it was November of 2003 or thereabouts, he sends a letter to McCormick giving him his three weeks notice. I don't hear with you in three weeks, you're done. Yeah. To say he did nothing, I mean, what he did was he had a lawyer who was lying to him about taking a variety of actions to protect his rights. I mean, are you saying there's a rule that prisoners are obliged to write their attorneys on a monthly basis and say, are you sure you did this? Are you lying to me? Send me the papers. I mean, that that seems a bit onerous, doesn't it? Well, I'm not saying they have to write their attorneys, but as this court noted in Schluter, you actually said it's his obligation to make sure things are filed. This court said that now he may have suspicions about his attorney. And I guess I would suggest I'm not trying to be harsh, but after a year I might have suspicions as to whether my attorney had done anything. Certainly after the year and a half, I would certainly have suspicions. But when I talk about extraordinary circumstances, you look at this, when I thought about this last night, it would be perverse to suggest that extraordinary circumstances exist in malfeasance and not in misfeasance, where you have negligence. And if they're trying to do everything right, they somehow are barred from litigating their claims. Yet when they do very little and their attorneys screw up through ineffectiveness, they then are allowed to have the gates open to the federal system. But he tried to represent himself and the state court wouldn't let him because of the rule that prohibits that dual representation. The hybrid representation. The hybrid. So what was he supposed to do? He was in a catch-22. He had a lawyer who stopped him from doing that. What more could he have done? I guess what I'm asking counsel is, if this isn't extraordinary circumstances, what is? Well, he could have done what Justice Thomas suggested in Lawrence v. Florida. He could have hired another attorney and or proceeded on his own. Aren't you focusing on the state PCRA? That's where there was the state court that wouldn't let him. But that's not before us. The Certificate of Appealability only applies to the equitable tolling in the federal case. And there's a 17-month period there. So is the other history really relevant? It's sorted in that. Yes, I am focusing on it. I'm not trying to focus on it for the state PCRA. It's not your fault. I think the question is for the court. To clarify, it's my understanding that the Superior Court finally ruled against Mr. Hunt on June 9th of 2005. And if they ruled against him finally and said, no, you lose on June 9th of 2005 and he files his federal habeas on October 18th of 2005, that's only a four-month gap. So it seems to me that if you win the case, it's on him not exercising reasonable diligence in trying to exhaust his state rights. If he did all that properly, then there's only a four-month gap between the state and the federal. The Pennsylvania Superior Court notified Mr. Hunt that he had no post-conviction rights left in May of 2004. He then proceeded to file a second PCRA, a frugalist PCRA petition with the state court, at which point the state judging then advised him in a letter saying, unless you've alleged one of our three exceptions to the one-year limitation, this is untimely. He was then appointed counsel by the state court, who then also did a no-merit letter in September of 2004, which again advised Mr. Hunt that you have not alleged any exceptions that apply to our PCR one-year statute of limitations. You are not entitled to relief. Despite being told by the Superior Court in May of 2004, being told by President Judge Kenneth Siemens of the Court of Common Pleas in August and September of 2004, and being told by his court-appointed attorney Robert Hollister in September of 2004 that he had no state rights left, Mr. Hunt then proceeded to file an appeal to the Pennsylvania Superior Court, which again the Superior Court reminded him that they had already told him in May of 2004 that he had no rights. The trigger date of May 2004. There's no debate in this record that as of May of 2004, Mr. Hunt knew that he had no viable state PCRA rights remaining. And that would become a critical period, because if the court accepts that he did have extraordinary circumstances and did act with due diligence up to that point, the Commonwealth would then argue that from May of 2004 to October of 2005, he exercised anything but due diligence. Could you focus then on this late issue as to whether he has a direct appeal still pending? It came sort of as a bit of a shock to us, and you did reply to our request. I didn't. I apologize for not filing a reply sooner. I don't practice a lot. That's all right. We got it. It's okay. Let's not worry about that. I don't think we've done anything for Mr. Regatt, but we'll ask him, at least I don't think I did, to our inquiry as to about this idea that he still has a direct appeal pending based on his letter stating something like, I would like to appeal. Mr. Regatt did file the original motion to expand the certificate. Yes, he did. And he also filed a brief in support of that. I filed a response brief. That's right. I think there's two things as to that. One is, I agree that it has not been raised properly. We're eight years now removed from the alleged filing of this notice of appeal. And I guess I take issue as to whether it was a notice of appeal. It just indicated that it was a letter to the court that said he intended to appeal. In my life, I've intended to do lots of things and not fallen through.  Well, at least as our clerk. I would agree with that, but I think the best evidence as to how the state court interpreted this is the fact that it was not considered an appeal. And in fact, he had counsel enter his appearance on the same day that that letter was filed. And moreover, perhaps most telling is the fact that all of his documentation since this time indicates that he never filed a direct appeal. Plus, I'm sure the docket reads the case was closed. Maybe not. Well, I think what the clerk of courts gets a document that's a handwritten letter from a litigant, which indicates an intent to appeal. They then have an attorney file a notice of appearance that same day. No actual notice of appeal. Instead of just saying, I intend to appeal, but no notice of appeal was ever filed. No filing fee was ever paid. The best evidence is that the clerk of court didn't consider it a notice of appeal. And if it had been properly filed, they would have complied with the rules as required. But in this case. Well, yeah, but if they were wrong, I mean, if they should have under their rules. But that doesn't really answer the exhaustion question. And so the fact that it's just been there for eight years. Well, I think it's important to some degree because as you spoke about comedy earlier, the question is, how does the state court interpret this particular rule and the requirements for a filing of a notice of appeal? And obviously at this point in time, the state court, the clerk of court, has never considered it to be a properly filed notice of appeal. And I would say with all due respect to Mr. Hunt, he never considered it a notice of appeal because all of his filings contended that he never had a chance to file his appeal. He never once suggested until here recently, right before this argument, that in fact he did file his appeal, which has been, as Attorney Reagan noted, in cyberspace or somewhere like that. In fact, it wasn't in cyberspace. It was in a storage cabinet somewhere in the basement of the Susquehanna County Courthouse. It was never sent to the Pennsylvania Superior Court, which is to me the most telling aspect of it, because if it was a proper notice of appeal, it would have been sent to the Superior Court. Can I, I want to focus you on what I started off with your adversary on, which is, you know, we're all focused here on equitable tolling. I think you have to concede it was before the district court, right? I mean, look at your brief. It's in there. But yet, there's nothing in the decision. There's nothing for us to review in terms of a decision on the square issue of equitable tolling. How do we not remand it for something? Well, the record speaks for itself, certainly. I'm not sure, you know, I think the only reason you would even consider remanding is if you feel that the certified record that's before you and the documents put before you somehow don't answer the question for you, and there's some type of need for some type of evidentiary hearing. At this point in time, if we consider everything that's there and in the record, I would suggest there's really no need for a remand because the court has everything in front of it to make that determination. If you feel there are issues of fact that have to be resolved by the trial court, then I would suggest that a remand would be proper. Do you have any more questions? Okay, thank you very much. Thank you. We'll hear the five-minute rebuttal. Thank you, Judge, and I'll try to be quick. Well, five minutes is five minutes. Right. I don't think the issue here is whether or not there's been attorney misconduct or malfeasance. I think we can all agree that this was an executable performance by this attorney and both attorneys. It's also my understanding, I believe, Attorney Knoll has been indicted on other matters as well in the meantime. Has been what? Indicted. Oh, indicted. Yeah. Oh, I'm lost. But really the issue, I think, is what actions did Hunt take, and that's perhaps where the record is somewhat deficient. What actions did Hunt take vis-à-vis the federal case? He filed it. And he filed it within the one year of the subsequent PCRA petition. You're putting the cat in the bag there. Is it the June 9, 2005 date is the trigger date, or what about counsel's argument that May of 2004 is the trigger date? Because if May of 2004 is the trigger date, then you're doomed, it seems. But, of course, that's an issue that we don't really know the answer to that perhaps would have to be remanded for the district judge to look at. But, again, I really think that deus ex machina in this case, and maybe that's the wrong word because it's not a magic trick, really the issue here is that Hunt did take action. He took action back in 99 when he filed with the county, with the clerk, on June 3. This is my notice of an appeal because under the Pennsylvania rule, that's all he needed to do. That doesn't answer the question that I keep coming back to about the federal habeas. What did he do about that? He didn't ask his lawyer, what are you doing about the federal habeas? Well, I think it would answer that question because then, of course, we don't have a one year problem here because there is no final state court conviction because no one has ever acted, and I did check the record. You've never raised that issue in the state court. I've never had a lawyer. But we have pro se litigants all the time. You've never asked the state court to decide that you have a non-final order, I guess, and all of his proceedings have been on the underlying assumption that there was an end date in that direct appeal. But you see, that's the beauty of that fact. Not the beauty of the fact. I can think of another. But the fact is the fact. The fact is that under Pennsylvania's rules, it's not up to Mr. Hunt to do anything once he files that notice of appeal. Mr. Hunt never, ever said to the state court, I have a direct appeal pending. Never asked him what's happening with that appeal. Everything he's done since has been under the assumption that he never filed a direct appeal. Because obviously he doesn't know. Well, we can't help that. A pro se litigant takes it as he finds it. True, but it's still there. See, that's my point. Regardless of what courts looked at that. Even the appellate court, the Superior Court in Pennsylvania, never looked at that issue. Technically, of course, it's not before us because the Certificate of Appealability doesn't reach that issue. But we can expand it. You're absolutely right. And I think in fairness you have to. I think in fairness you have to. This is the Greenwood of Liberty. It's not in fairness to the state. The state, which has spent all this time on the assumption that the criminal direct appeal is over, now may find itself having to argue that there's still a direct appeal out there on the criminal proceeding. Fairness to the state. Fairness to the state. They are a litigant before us, just like you are. Fairness to the state, I think, has to incorporate the following fact. Justice in Pennsylvania looks bad as a result of this case. Justice in Pennsylvania looks bad in a lot of the cases. But we don't go out of our way to undo that, which the litigants haven't done. But again, it all comes back to the malfeasance of the two attorneys. I mean, this guy's left holding the bag. And he's left holding the bag, not retaining one attorney, but relying on two attorneys. And all this recommending the services of McCormick, and he's writing to both of them. But again, if we can't get to the equitable tone because we feel that, look, he didn't do all that he should have done or could have done, we still have an appeal that's pending. I mean, this is under that rule. So no court in Pennsylvania has ever been asked to look at that. I think that's certainly within this court's purview to remand it back to the district judge. And the district court would be, you know, to satisfy Comey, send it back to Pennsylvania and ask the trial court, not the appellate court, to look at that. And I just think that's fairness. And I think the state has a lot at stake in the integrity of the process, just as much as it does. Thank you. Thank you. I'd like to take a minute. No, the lawyers can go. I'd like to take a minute to welcome to the court the judges from Russia who are visiting us. I guess they are visiting us under the auspices of Rutgers Law School, and we welcome the dean. Would the dean stand up? It's Dean Solomon. We welcome you very much. And I ask the people who are sitting in the back row, they have come with translators, and the translators will try to explain to them what's happening here. Not all of them are as fluent in, well, we are not fluent at all in Russian. So if it disturbs some of you in the back row, please move forward so you can hear the proceedings and not be disturbed, and I think the translators should proceed with what they're doing. I will try to explain a little bit before each case what we have before us. The next case, that was a habeas case. I'm not sure that the Russian system has anything like that. The great rich? Yeah, but the next case before us.